IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IVETTE FLORES-SUAREZ EL AL
    Plaintiffs

    v.

TURABO MEDICAL CENTER PARTNERSHIP
d/b/a HOSPITAL INTERAMERICANO DE
MEDICINA AVANZADA (HIMA)
    Defendant

Civil No. 99-1133(SEC/ADC)

RECEIVED & FILED
SEP 2 8 2001
OFFICE CLERK, U.S.
DISTRICT
SAN JUAN, P.R.

## OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(c) the parties have consented to final entry of judgment

by a United States Magistrate Judge. *See also Local Rule 505(3)*. An Order of Reference

was entered on March 10, 2000 **(Docket No. 20)**. Before the Court is Defendant's Motion

for Judgment as a Matter of Law and for a New Trial, plaintiffs' opposition thereto and

plaintiffs' motion to strike defendant's motion **(Docket Nos. 73, 81, 82, 84)**.

## I. BACKGROUND

Plaintiffs Ivette Flores-Suárez ("Flores") and Luis Angel Correa ("Correa") filed suit

against the Hospital Interamericano de Medicina Avanzada ("HIMA") seeking equitable

and injunctive relief and compensatory damages pursuant to federal and Puerto Rico laws.

The action was brought alleging sexual discrimination pursuant to Title VII, the Pregnancy

Discrimination Act, 42 U.S.C. § 2000e *et seq.*, wrongful discharge, pursuant to 29 L.P.R.A.

§185A *et seq.*; discrimination due to pregnancy and tortuous infliction of emotional

distress, pursuant to the Working Mother's Law, 29 L.P.R.A. 469 *et seq.*; retaliation for

filing the instant action pursuant to 42 U.S.C. § 2000e-3; and, constructive discharge from

employment in violation of Puerto Rico Law No. 115. The complaint also sought damages



pursuant to Seguro por Incapacidad No Ocupacional Temporal ("SINOT"), 11 L.P.R.A. § 201 *et seq.* and Art. 1802, 31 L.P.R.A. §5141.

The matter was tried before a jury beginning on January 8, 2001. On January 16, 2001, the jury returned a verdict in favor of plaintiffs Flores and Correa and against Turabo Medical Center Partnership d/b/a Hospital Interamericano de Medicina Avanzada (HIMA). In its verdict the jury determined plaintiff Flores was a part-time, regular employee for HIMA. The plaintiffs were awarded $570,000 in compensatory and punitive damages. The Court subsequently amended the award to $940,001 (adding $1.00) pursuant to the statutory requirements of Puerto Rico law (Docket No. 94). HIMA was also ordered to reinstate Flores (Docket No. 94). HIMA now moves for judgment as a matter of law or, in the alternative, for a new trial.

II.    **ANALYSIS**

       **A. Judgment as a Matter of Law**

       **1. Standard**

       HIMA moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 on the bases that the jury's verdict that Flores was a regular employee is not based upon the evidence presented; there is no legally sufficient evidence for a jury to find for Flores on the issues of discrimination under the Pregnancy Discrimination Act, the Working Mothers Protection Act Law No. 3 and constructive discharge pursuant to Puerto Rico Law 115. Defendant further argues that the damages awarded are grossly excessive and contrary to law.

       Rule 50 of the Federal Rules of Civil Procedure provides as follows:

(a) Judgment as a Matter of Law.
(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.
(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.
If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment – and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:
(1) if a verdict was returned:
(A) allow the judgment to stand,
(B) order a new trial, or
(C) direct entry of judgment as a matter of law. . . .

Fed.R.Civ.P. 50.

"A court is without authority to set aside a jury verdict and direct the entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Keisling v. SER-Jobs for Progress*, 19 F.3d 755, 759-60 (1st Cir. 1994). To determine whether this standard has been met "the court must examine the evidence in the light most favorable to the non-moving party; in addition, the non-moving party is entitled to 'the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.'" *Id.* (citations omitted)

## 2. Waiver

HIMA's motion before the Court is a renewed motion for judgment as a matter of law. At the close of plaintiffs' case HIMA moved to dismiss the case. The Court construes said motion as a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. *See Peterson v. Hager*, 724 F.2d 851, 853 (10th Cir. 1984) (a motion to dismiss made in a jury trial should be treated as a motion made pursuant to Rule 50(a); *Pessotti v. Eagle Mfg. Co.*, 774 F.Supp. 669, 677 (D.Mass. 1990). At that time HIMA argued that there was no violation of a federally protected right and that the evidence had not shown that a constructive discharge had occurred. At the same time plaintiffs moved for judgment as a matter of law pursuant to Rule 50. Both motions were denied.

Following the close of defendant's case, plaintiffs renewed their motion pursuant to Fed.R.Civ.P., Rule 50. In opposing plaintiffs' request, HIMA stated and highlighted there was no evidence of retaliation to the extent and degree required by the law. The record reflects that HIMA, however, did not renew its motion to dismiss (i.e. motion for judgment as a matter of law) at the close of all evidence. Plaintiffs now argue that HIMA failed to raise the issues presented in the current motion at the close of all evidence and as a result any issue now raised by HIMA is deemed waived.

Procedurally, a party renewing a motion for judgment as a matter of law "is required to have moved for judgment as a matter of law at the close of all the evidence." *Keisling v. SER-Jobs for Progress*, 19 F.3d 755, 758 (1st Cir. 1994) (citing Fed.R.Civ.P. 50(b)). Additionally, the motion must include every claim upon which the party bases its request for judgment as a matter of law. If the motion fail to include each and every claim it is a "fatal omission." *Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 723 (1st Cir. 1994).

Inasmuch as HIMA failed to move for judgment as a matter of law at the close of all evidence, its current motion is procedurally defective. It must be noted, however, that defendant's motion raises issues which were not presented to the court at the close of all evidence. "A motion for judgment as a matter of law made at the close of all evidence preserves for review only those grounds specified at the time, and no others." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1992 (1ˢᵗ Cir. 1995). HIMA failed to preserve any issues for review and accordingly, its motion for judgment as a matter of law is DENIED.

HIMA advances the same arguments for both types of relief it seeks: a motion for judgment as a matter of law and a new trial. Even if HIMA had not waived the issues it raises in its motion for judgment as a matter of law, as will be seen by the following analysis in Section B, "Motion for New Trial" its arguments do not merit the granting of same.

### B. Motion for New Trial

### 1. Standard

The Court now turns to defendant's request for a new trial. HIMA moves for a new trial incorporating the same arguments as those in its motion for judgment as a matter of law.

Rule 59 of the Federal Rules of Civil Procedure permits a court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59. More so, it is a well settled principle that a jury's verdict should only be overturned under the most compelling of circumstances. *Velázquez v. Figueroa-Gómez*, 996 F.2d 425, 417 (1ˢᵗ Cir. 1993). Whether to grant a motion for a new trial lies within the discretion of the trial court. *Allied Chemical*

*Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Thus, a trial court exercises its discretion in favor of granting a new trial sparingly as "a jury's verdict on the facts should only be overturned in the most compelling circumstances." *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir. 1988). A court may order a new trial if the jury's verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice. *Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir.1994) (citations omitted).

### 2.    Employee Status

HIMA's first contention is that the jury's determination that Flores was a regular employee is not based upon the evidence presented. The jury found that Flores was a regular, part-time employee. HIMA bases its argument on Flores' testimony that she signed a regular, full-time contract, yet the jury did not determine that Flores was not a regular, full-time employee. Instead, according to HIMA, the jury chose to believe HIMA's witnesses that Flores did not sign such a contract, that a change of status form or document had not been prepared and signed and that prior to acquiring said status regular employees are required to go through a probationary period.    HIMA concludes and argues that the only way the jury could have determined that Flores was a regular, part-time employee is by having the jury determine as a matter of law that temporary, part-time employees automatically become regular, part-time employees by serving one day after the last day on the temporary contract or serving temporarily without a written contract. HIMA, while arguing there is no documentary evidence directly reflecting that Flores was made a regular employee, concedes that documentary evidence revealed that Flores had been recommended for a regular, part-time position.

The parties stipulated that Flores was employed by HIMA as an emergency ward technician beginning June 7, 1997; that on October 17, 1997, she learned she was pregnant; and that on October 20, 1997, the doctor ordered bed rest.

Other evidence elicited at trial consists of the following: Eric Pérez ("Pérez"), Vice-President of HIMA, testified that he was acquainted with the requirements of temporary contracts and laws and regulations related to human resources and personnel. Upon being questioned by plaintiffs' attorney, he opined that an employee who continues to work without renewing a temporary contract becomes a regular employee. Pérez conceded that if Flores worked beyond the expiration date of her temporary contract she became a regular employee. He also testified that once an individual becomes a regular employee he/she cannot become again a temporary employee. Pérez testified that if Flores worked beyond July, 1997, she was a regular employee and according to the law there was no need for the signing of any other temporary contracts.

The evidence on record reflects that when Flores was hired on June 9, 1997, she had signed a 30-day contract for employment, effective the same date. The contract expired after 30 days and she did not sign any further contracts until December 1997. It is uncontested that at HIMA's request and while she was pregnant Flores was asked to sign three employment contracts on the same date, that is, December 1997 (Exhibits 16, 17, 18). According to Pérez he did not know of any reason for Flores to sign the contracts while she was pregnant and placed on or recommended bed rest. In cross examination and while questioned regarding employment benefits available to temporary *vis a vis* regular employees, Pérez also testified that a temporary employee is not entitled to the one- year reservation of job under SINOT, but that a regular employee is entitled to same. Pérez

indicated that Flores was a regular employee, not a temporary one and that pursuant to statutory provisions she was entitled to the one year reservation under SINOT. Moreover, Pérez agreed that a regular employee who is pregnant is protected under SINOT and cannot be terminated. In response to structured and vigorous cross-examination, Pérez agreed that anyone terminating a person from employment, under the scenario depicted by plaintiffs as described above, had incurred in a violation of law.

The second day on the witness stand Pérez's testimony changed somewhat as he testified that if an employee works beyond the expiration date of a contract that employee does not necessarily become a regular employee but that the person stays on for temporary purposes. Pérez testified that it was decided to terminate Flores because she was not available to cover the assigned shift at the cardiovascular unit on a temporary basis. However, it was his testimony that the only way to properly terminate Flores was to wait until her contract was over as there was no further need of her services.

At trial the testimony of Renia E. Rolón-Rosa ("Rolón"), Flores' supervisor, was also presented. It was her testimony that on September 9, 1997, she had recommended that Flores fill a vacant position at the cardiovascular laboratory. A memorandum authored by Rolón and addressed to Rogelio Díaz recommended plaintiff Flores for a part-time regular position on the 5:00 PM to 11:00 PM shift (Plaintiffs' Ex. 21). The recommendation was approved on September 10, 1997, by handwritten notation on the memo indicating the appointment was effective September 15, 1997 (Plaintiffs' Ex. 22). Rolón testified that in order for the appointment to become effective there must be something in writing attesting to such fact. She also testified that she considered Flores was not appointed as a regular employee of HIMA and that she was only a temporary contract employee. Rolón also

considered Flores had frequent and/or prolonged periods of absence from work as a result of her pregnancy. Rolón further stated that Flores was separated because of her prolonged absence from work, event prompted by her high risk pregnancy.

Flores testified that she found out and had been assured she was a regular, part-time employee at the time Rolón told her she was part of the team and would have to buy a uniform. Rolón showed Flores the memorandum addressed to the Human Resources Department in which her designation as a regular employee was being requested and told her (Flores) that Human Resources was to automatically take care of everything and Flores had to do nothing. Prior to this time Flores wore casual clothing with a white robe and subsequent to the memorandum and the notice of having become to regular status she wore a nurse's uniform, pink in color. Flores remained on the 5:00 PM to 11:00 PM shift until October 20, 1997, when she became unable to work as a result of her pregnancy and bed rest was required.

Flores testified that while at home on bed rest she received a call from Evelyn Roque-Báez ("Roque"), Appointment and Changes Technician for HIMA, who told her she needed to go to the HIMA Human Resources Office to sign some documents. At the time Flores responded that she could not attend said meeting due to her condition. Reportedly, Roque told Flores it was for "her job security." It was Roque's testimony she had prepared the contracts for temporary employment depicted at Exhibits 16, 17, and 18. Flores recalled having attended an appointment at HIMA where she was given and signed the four contracts upon which HIMA now claims plaintiff still occupied a temporary, part-time position. Roque testified that the documents were signed in her presence, but she did not recall the date in which this event took place. Admitted as Exhibits 16, 17, 18 are the three

contracts for temporary employment. According to Flores she signed a fourth contract which made her a regular, full-time employee. Nonetheless, the contract was not presented at trial.

The dates on the contract do not coincide with the actual dates in which they were signed. Flores was told that the dates listed on the employment contracts had to be the ones specified within the contracts and not the date in which actually signed, otherwise "it would ruin it." The temporary contract dated July 8, 1997, was signed in December 1997 (Exhibit 16), the August 7, 1997, contract was signed by Flores at the same time (Exhibit 17), and the October 6, 1997, contract was also signed in December 1997 (Exhibit 18). Flores testified that Roque had told her that the signing of the contracts was to guarantee her position and was for her benefit. When Flores asked for copies of the contracts Roque told her that copies could not be given to her.

Flores, as previously mentioned, testified that she signed a fourth contract which provided for full-time employment. Roque testified, however, that Flores did not sign a contract for a regular, full-time position. Roque testified that no status document was prepared for Flores to become a regular employee. Following the signing of the contracts, according to Flores, Roque had informed her that after giving birth Flores need simply to call to return to work. Immediately upon the signing of the contracts Flores told her husband that one of the contracts she signed guaranteed her a permanent, full-time position.

Contrary to HIMA's position, testimony elicited at trial and documents admitted into evidence support the jury's findings. First, it is clear Flores had signed a 30-day contract which expired on July 7, 1997, yet she kept on working past that date. It appears that the

jury considered the fact that Flores was initially hired as a part-time, temporary employee, that her initial contract expired and no other contracts were presented to her yet she continued to be employed by HIMA. Therefore, were the jury to credit Pérez's (HIMA's Vice President) testimony, as it appears they did, Flores was to be considered a regular employee, inasmuch as he had testified and assured that an employee who continues to work without renewing a temporary employment contract becomes a regular employee. Thus, if Flores worked beyond the expiration date of her temporary contract she became a regular employee. He also testified that once an individual becomes a regular employee that person cannot become again a temporary employee. Moreover, documentary evidence provides a foundation for the finding that Flores was a permanent, part-time employee. Indeed, the memorandum which recommended Flores for a part-time regular position for the 5:00 PM to 11:00 PM shift was approved on September 10, 1997, by handwritten notation on the memorandum made by the appointing authority, indicating the appointment was effective September 15, 1997. Additionally, there is evidence showing that Flores was allowed to complete her application for benefits under SINOT. Protection under SINOT and, more so, the one-year reservation of the position, is only available for regular employees. Moreover, testimony was presented pointing to the fact that Flores had been assured that she had become a permanent employee and that Human Resources Department was to automatically take care of everything and Flores had to do nothing else while on leave.

At trial evidence was also presented by HIMA employees to establish that Flores was not made a permanent, part-time employee or a permanent, full-time employee. Counsel for defendant assured he drew such a distinction for the jury to understand the

factual differences embodied in each concept. Flores testified that she signed a contract making her a permanent, full-time employee but it was not produced at trial. It appears this part of her testimony the jury did not believe. Consequently, there was evidence to support both sides' version of the fact. "It is well settled that 'when there are two permissible views of the evidence the factfinder's choice between them cannot be clearly erroneous.'" *Taber Partners 1, v. Insurance Co. of N. Am., Inc.*, 917 F.Supp. 112, 117 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1138 (1st Cir. 1995).

More as, it is the province of the jury to determine how much weight should be given to a witness and the credibility of each witness. It is evident that the jury chose to credit a portion of Flores' testimony while choosing to discredit the portion of her testimony that related to her signing of a contract for a permanent, full-time employment. It is clear that the jury pondered well the testimony of HIMA's Vice President and reached its own conclusions from such testimony and all that other evidence regarding the time, way and circumstances under which the last three temporary employment contracts were signed. Therefore, it is equally evident that the jury chose to credit portions of HIMA employees' testimony and actions by HIMA while discrediting others. For example, there was conflicting testimony by HIMA employees whether Flores was a permanent or temporary employee, but written documents indicate that Flores was a regular, part-time employee. That the jury chose to determine Flores was a part-time, regular employee was within their province, particularly in light of the facts of the case. (*See* **Docket No. 70**). "The mere fact that a contrary verdict may have been equally – or even more easily – supportable furnishes no cognizable ground for granting a new trial." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1333-34 (1st Cir. 1988).

### 3. Evidence of Discrimination

HIMA further contends that there is no legally sufficient evidence for a reasonable jury to find for the plaintiffs on the issue of discrimination, retaliation and constructive discharge. HIMA argues that the jury relied upon unsound inferences once it determined that Flores was a regular employee. More particularly, HIMA asserts that Flores did not meet her burden of proving that she was terminated as a result of her pregnancy in that she relied upon inferences she was a pregnant, regular employee, terminated and substituted at work. Finally, HIMA contends the indirect evidence presented by plaintiffs on the issue of retaliation and constructive discharge does not legally amount to a verdict in plaintiffs' favor.

Testimony elicited at trial supports the jury's findings on the issues raised by HIMA. Flores specifically told Rolón she was pregnant. Because of her pregnancy Flores was unable to work subsequent to October 20, 1997. Flores' spouse, Correa, testified that when problems with Flores' pregnancy began he called HIMA and was told to bring to Rolón a medical certificate whereupon he met with Rolón in her office and gave to her the medical certificate. Correa testified that Rolón was upset and angry because according to her she had to fill the 5:00 PM to 11:00 PM shift and needed Flores. Correa further testified that Rolón stated that if Flores did not return to work she would fire Flores. There is evidence indicating that a similar incident occurred at least one more time.

On approximately December 3, 1997, Correa saw Rolón again when he brought to her a second medical certificate because Flores needed to remain at home resting. The medical certificate expired December 6, 1997. Once again Rolón reinstated to Correa that if Flores did not return to work she would be fired. Flores did not return to work on December 6, 1997, pursuant to doctor's orders, and was subsequently terminated.

Jelissa Cuevas, a HIMA employee employed prior to the start of Flores's employment with HIMA, became ill at the same time that Flores was away from work. At that time Rolón recruited a new employee. She testified that with Cuevas at work and Flores out she would have recruited a new employee because the position required two technicians. Rolón also testified that Venessa Pagán came on as temporary contract employee to cover for Flores while Flores was out from work. Additionally, Rolón testified that Rosa Morena was substituted by Pagán to cover for Flores. In sum, Rolón was extensively cross-examined in regards to the different shifts, the number of persons necessary to cover each shift and the employee's position. Moreover, during cross examination and with Rolón's assistance, a chart was prepared in order to depict the shifts, the employees assigned per shift, their classification and how were they substituted by others. From this, the jury had valid reasons to conclude Flores had become a part-time regular employee.

As referred to above, while pregnant and home at bed rest, Flores signed backdated temporary employment contracts. Flores also applied for and received SINOT benefits, certified by HIMA's Human Resources Manager on December 3, 1997. Prior to the birth of her child and while unable to work Flores received a retroactive termination letter on March 31, 1998, terminating her effective October 10, 1997. Time sheets indicated that Flores actually worked several days past October 10, 1997, up to and including October 20, 1997. Thus, serious and valid doubts on the accuracy and/or trustworthiness of HIMA's records as well as doubts concerning its representatives' instructions for these actions were created. Pérez, HIMA's Vice President, testified that a regular employee who is pregnant is protected under SINOT and cannot be terminated.

Nonetheless, plaintiff was terminated. Thus, Pérez agreed that under the scenario depicted by plaintiff, HIMA terminated Flores in violation of the law. More so, Rolón, Flores' supervisor, at all times assured and testified that Flores was separated from work because of her pregnancy, inasmuch as the same did not allow her to come back and perform her duties during the assigned shift.

The Pregnancy Discrimination Act of 1978 amended Title VII to protect women from discrimination on the basis of childbirth, pregnancy, and related medical conditions. 42 U.S.C. § 2000e(k). *Vázquez-González v. K-Mart Corp.,* 940 F. Supp. 429, 434 (D.P.R. 1996). Hence, it is well settled under Title VII that an employer may not discharge an employee based on the categorical fact of her pregnancy. *Smith v. F. W. Morse & Co., Inc.,* 76 F.3d 413, 423 (1st Cir. 1996). "By the same token, since a short-term inability to work is bound up with the very nature of pregnancy and childbirth, that disability is a pregnancy-related condition within the meaning of 42 U.S.C. §2000e(k), and Title VII thus prohibits an employer from dismissing an employee in retaliation for taking an authorized maternity leave." *Id.* at 424. An employer, however, may discharge an employee while she is pregnant if it does so for legitimate reasons unrelated to her pregnancy. *Id.* Accordingly, "an employer may discharge an employee while she is on a pregnancy-induced leave so long as it does so for legitimate reasons unrelated to her gravidity." *Id.* Based on the foregoing, the First Circuit has concluded that "Title VII mandates that an employer must put an employee's pregnancy (including her departure on maternity leave) to one side in making its employment decision — but the statute does not command that an employer bury its head in the sand and struthiously refrain from implementing business judgments

simply because they affect a parturient employee." *Id.* Title VII requires a causal nexus

between the employer's state of mind and the protected trait – pregnancy. *Id.* at 425.

"When considering circumstantial evidence of sex discrimination, [Courts] apply

a three-stage, burden-shifting framework that was first articulated in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973), and further delineated in *Texas Dep't of Cmty Affairs*

*v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

*Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 53-54 (1st Cir. 2000). To

establish the existence of a *prima facie* case plaintiff must show that: (1) she is pregnant

(or has indicated an intention to become pregnant), (2) her job performance has been

satisfactory, but (3) the employer nonetheless dismissed her from her position (or took

some other adverse employment action against her) while (4) continuing to have her

duties performed by a comparably qualified person. *Smith v. F.W. Morse & Co., Inc.*, 76

F.3d 413, 421 (1st Cir. 1996). Once a *prima facie* case is established, then at the second

stage, the burden shifts to the employer to articulate a legitimate, non-discriminatory

reason for its adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802 (1973); *Rodríguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir. 1999).

[At the second stage, the burden shifts to the employer to state a legitimate,

nondiscriminatory reason for the adverse employment action.] *Hicks*, 509 U.S. at 506-07.

The employer's burden is merely a burden of production; the employee maintains the

burden of proof throughout. *Id. at 507.* If the employer meets its burden, the presumption

of discrimination evaporates. *Id.* If the employer presents a legitimate and non-

discriminatory reason for its action, then at the third stage the burden shifts back to the

plaintiff, at which time she must show that the reason advanced by the employer is merely a pretext for intentional discrimination based on her pregnancy. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-508 (1993); *Rodríguez-Cuervos v. Wal-Mart Stores, Inc., supra*, 181 F.3d at 19.

Based upon the evidence presented a reasonable jury could have concluded that Flores was discharged because of her pregnancy. Indeed, it is quite clear that a prima facie case of discrimination was presented to the jury. Reportedly, Flores was pregnant, her job performance was clearly satisfactory as she was hired as a temporary employee but within a very short time was recommended for a permanent or full-time position, she was dismissed her from her position and her duties were performed by temporary contract employees. Consequently the burden shifted to HIMA to articulate a legitimate, non-discriminatory reason for its adverse employment action.

HIMA is consistent in its argument that Flores was terminated because she was a temporary employee, her contract had expired and the needs of HIMA required an immediate replacement. However the evidence presented could lead a reasonable jury to conclude that Flores was terminated as a result of her pregnancy, to wit: While Flores was on maternity leave, her spouse was told that if Flores did not return to work she would be fired. The Vice-President of HIMA acknowledged that Flores was unlawfully terminated while on SINOT leave. Flores discovered she was pregnant on October 17, 1997. Evidence was presented that her employers became aware of her pregnancy very soon thereafter and no later than October 20, 1997, when she was ordered to bed-rest by her physician. While on maternity leave she was called in to sign pre-dated temporary employment contracts. After having been on maternity leave for approximately five

months, she received a termination letter, advising that she was terminated effective

October 10, 1997, prior to the time she became aware of her pregnancy, and even though

she had worked at HIMA subsequent to October 10, 1997. A reasonable jury could

conclude, a the jury here did, that Flores was discharged because of her pregnancy and

that HIMA attempted to obscure same by backdating contracts so that it appeared Flores

was a temporary employee (something the jury found otherwise) and retroactively

terminating Flores days before anyone knew she was pregnant. Clearly, based on the

evidence presented, HIMA is not entitled to a new trial on the issue of discrimination.

### 4. Evidence of Retaliation and Constructive Discharge

Flores was reinstated as a part-time technician on March 20, 2000. After the second

day of work, Flores returned home crying because felt she was being isolated, that she

was not welcome upon her return. Once back at the workplace, the working environment

was intolerable. Flores was made to feel she was not part of the group. She was left out

of activities in the Department. She would be given a work schedule and when she arrived

at work would find it had been changed. When she asked for time off in order to attend

medical appointments (either hers or the baby's), the request was never approved and

she was always docked. Flores narrated that on one occasion when her child was

undergoing surgery, Flores asked for time off and was told that she could not because

another technician was getting married and they needed Flores to remain within that shift.

She also recalled that demands were made upon her not to leave things pending upon

concluding her shift, but when she would come to work there was work pending (i.e.,

cleaning the equipment used) from the previous shift.

According to Flores' psychiatrist, when she returned to work Flores once again began feeling symptoms of depression. Dr. Milagros Ortiz-Tavárez testified that Flores felt harassed, pressured and unwelcome at HIMA. Additionally, Flores related that the supervisor demanded more from her than from other workers. Flores also indicated to her physician that she was unable to attend appointments because her supervisor would not authorize her to leave work. Flores told Dr. Ortiz that when she attempted to call in sick, she was not allowed to and was required to report to work. Flores also related that a supervisor had insulted her. Notwithstanding, when questioned Rolón testified that she never insulted Flores. In continuing her narrative, Flores stated she was required to turn in her locker which was to be used by other employees and as a result she was the only employee without a locker. Rolón testified that Flores had access to a locker when she was reinstated, but explained that it was one that had to be shared between two or three employees. In this regards, Rolón recalled that once a problem arose among the employees that related to the sharing of the locker and the use of padlocks. It appeared that on one occasion an employee from a previous shift who shared the locker forgot to remove her padlock from the locker. At the time Flores arrived to work she did not have access to the locker and had no place for her personal belongings. Ultimately, Flores resigned from HIMA as she could not handle the pressure.

At issue is whether the jury's verdict that upon her reinstatement Flores was retaliated against and constructively discharged is against the demonstrable weight of credible evidence or resulted in a blatant miscarriage of justice. As discussed above, the jury has appropriately determined that Flores was subjected to discrimination.

The First Circuit applies an "objective standard" in determining whether an employer's actions have forced an employee to resign." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 26 (1st Cir. 1997). "The test is whether 'a reasonable person in the employee's shoes would have felt compelled to resign.'" *Ramos v. Davis & Geck,Inc.*, 167 F.3d 727, 732 (1st Cir. 1999) (quoting *Calhoun v. Acme Cleveland Corp* 798 F.2d 559, 561(1st Cir. 1986). The purpose of the "constructive discharge doctrine is to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job." *Id.* at 732. "The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign." *Id.*

The jury verdict accepts Flores versions of the facts that after filing her discrimination lawsuit and upon her return to work the conditions were such that she was forced to resign. For example, the jury could have reasonably believed, as it appears it did, that the working environment was intolerable, Flores was not part of the group, she had no employee locker, work schedules were changed without notice, time off was not approved, and greater demands were made upon Flores than on other employees. This testimony was entirely supported by the testimony of Dr. Ortiz who gave a detailed description of plaintiff's emotional state and the times in which said condition almost called for plaintiff's hospitalization to avoid a crisis. Although the Court may not have reached the same conclusion as the jury, there was sufficient evidence for the jury to conclude that Flores was retaliated against and constructively discharged.

### 5. Verdict

The jury awarded to Ivette Flores-Suarez $45,000 in back pay and $125,000 in compensatory damages for violations of the Pregnancy Discrimination Act and/or the Puerto Rico Working Mothers Protection Act; $75,000 in compensatory damages for retaliation in violation of the Pregnancy Discrimination Act and/or the Puerto Rico Working Mothers Protection Ac; and, $125,000 in compensatory damages for constructive discharge in violation of the Pregnancy Discrimination Act and/or the Puerto Rico Working Mothers Protection Act; $125,000 in punitive damages. The jury also awarded Luis Angel Correa derivative damages of $75,000. The award was amended and certain amounts doubled pursuant to Puerto Rico law resulting in a final award of $940,001. *See* Docket No. 94.

It is HIMA's last contention that the damages awarded by the jury are grossly excessive and contrary to law. In determining whether a verdict should be modified, the reviewing court views the evidence in the light most favorable to the prevailing party, and so long as there is some relationship between the claim and the award, it will be allowed to stand, unless the award if "grossly excessive," "inordinate," "shocking to the conscience of the court," or so high that it would be a denial of justice to allow it to stand. *Smith v. K-Mart Corp.*, 177 F.3d 19, 30 (1st Cir. 1999); *Velázquez v. Figueroa-Gómez*, 996 F.2d 425, 428 (1st Cir. 1993); *Betancourt v. J.C. Penney, Co., Inc.*, 554 F.2d 1206, 1207, 1209 (1st Cir. 1977).

In the case at bar testimony was presented at trial regarding the effects that the termination of Flores' employment had upon her both physically and mentally. Flores' physician (a psychiatrist) corroborated Flores' account of the effects of the discharge. Testimony was also presented on how the termination affected Correa, Flores' spouse.

HIMA now contends that testimony regarding the health problems of Flores' son inflamed the jury and caused the damages to be inordinately increased. While there was some testimony regarding a health condition suffered by Flores' son since birth, said testimony was not of the nature, as described by HIMA, to lead the jury to conclude that Flores' son's medical condition was related to HIMA's actions. It remains a fact that there was evidence through which the jury was told the baby's condition was congenital. More so, no other evidence was presented regarding necessary treatment or expenses incurred by plaintiffs in such treatment.

The evidence adduced at trial supports the jury award. The First Circuit has found a $200,000 award for compensatory damages for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life in an ADA case "a rational appraisal of the damages actually incurred." *Hogan v. Bangor & Aroostook R.R.*, 61 F.3d 1034, 1037-38 (1st Cir. 1995). The First Circuit also upheld a jury's verdict of $225,000 in compensatory damages for an employer's failure to accommodate plaintiff's disability. *See Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 256-57 (1st Cir. 2000). Finally, the First Circuit in age discrimination case considered $250,000 an appropriate award of compensatory damages for emotional distress based on plaintiff's testimony that he had trouble sleeping, was anxious, and in his new job worked more and earned less than in his former position, even though "[t]here was no evidence that [plaintiff] ever sought medical treatment or suffered any long-term depression or incapacitation." *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 36 (1st Cir.), *cert. denied*, 528 U.S. 1021 (1999).

Here, Flores' testimony of her damages is buttressed by the testimony of her spouse, as well as her treating psychiatrist. When confronted with the succinct account of

the facts by Flores, one may initially consider the verdict on damages excessive, as argued by HIMA. Nonetheless, upon reviewing her testimony along with the psychiatrist's description of different depressive episodes and Correa's testimony, it is considered the jury's verdict is reasonable. Moreover, the award is not excessive in light of the number of claims brought by the plaintiffs. Indeed, the highest amount awarded for any one claim was $125,000, considerably less than the awards discussed in the above-cited cases.

The judgment of a jury is given wide latitude and will be upheld so long as it does not exceed some "rational appraisal or estimate of the damages that could be based on the evidence before the jury." *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1161 (1st Cir. 1995). The Court cannot say that the jury verdict is so excessive that it shocks the conscience or so high that to allow it to stand would be a denial of justice.

## III. CONCLUSION

IT IS THEREFORE ORDERED, based on the foregoing, that the defendant's motion for judgment as a matter of law and for a new trial (**Docket No. 73**) be **DENIED**. Plaintiffs' Motion to Strike Defendants Untimely Request for New Trial (**Docket No. 82**) is **DENIED**.

SO ORDERED.

At San Juan, Puerto Rico, on this 27th day of September, 2001.

**AIDA M. DELGADO-COLON**
U.S. Magistrate-Judge